UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| TRACEY GROSS,[1] <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI,[2] Acting Commissioner of Social Security, <br><br> Defendant. | Case No. 1:21-cv-00022 <br><br> Judge William L. Campbell, Jr. <br> Magistrate Judge Alistair E. Newbern |

To: The Honorable William L. Campbell, District Judge

## REPORT AND RECOMMENDATION

Plaintiff Tracey Gross filed this action under 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of the Social Security Administration (SSA) denying her applications for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401–434, and for supplemental security income (SSI) under Title XVI of the Social Security Act, *id.* §§ 1381–1383f. (Doc. No. 1.) The Court referred this action to the Magistrate Judge to dispose or recommend disposition of any pretrial motions under 28 U.S.C. § 636(b)(1)(A) and (B). (Doc. No. 7.) Before the Court is Gross's motion for judgment on the record (Doc. No. 20), to which the Commissioner has responded in opposition (Doc. No. 23). Having considered the parties' arguments and the administrative record (Doc. No. 17) as a whole, and for

---

[1] The parties agree that the correct spelling of Plaintiff Gross's first name is "Tracey."

[2] Under Federal Rule of Civil Procedure 25(d), Acting Commissioner of Social Security Kilolo Kijakazi is automatically substituted as the defendant in this action. *See* Fed. R. Civ. P. 25(d).

the reasons that follow, the Magistrate Judge will recommend that the Court deny in part and grant in part Gross's motion.

I. Background

    A. Gross's DIB and SSI Applications

Gross applied for DIB and SSI on November 27, 2018, alleging that she has been disabled and unable to work since July 1, 2015, as a result of fibromyalgia, depression, anxiety, bipolar, high blood pressure, artery blockage, and schizophrenia. (AR 116–17, 126–27.[3]) The Commissioner denied Gross's applications initially and on reconsideration. (AR 115, 125, 141, 151.) At Gross's request, an administrative law judge (ALJ) held a telephonic hearing regarding her applications on April 16, 2020. (AR 36–66, 189–90.) Gross appeared with a non-attorney representative and testified.[4] (AR 36, 43–59.) The ALJ also heard testimony from a vocational expert. (AR 59–63.)

    B. The ALJ's Findings

On May 5, 2020, the ALJ issued a written decision finding that Gross was not disabled within the meaning of the Social Security Act and applicable regulations and denying her claims for DIB and SSI. (AR 16–30.) The ALJ made the following enumerated findings:

    1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.

    2. The claimant has not engaged in substantial gainful activity since July 1, 2015, her alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

---

[3]     The transcript of the administrative record (Doc. No. 17) is referenced herein by the abbreviation "AR." All page numbers cited in the AR refer to the Bates stamp at the bottom right corner of each page.

[4]     The transcript of the telephonic hearing mistakenly identifies Gross's representative as an attorney. (AR 36.) However, other documents in the administrative record confirm that he was a non-attorney representative. (AR 1, 255–256.)

* * *

3. The claimant has the following severe impairments: ischemic heart disease; fibromyalgia; anxiety and depression (20 CFR 404.1520(c) and 416.920(c)).

* * *

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in sections 4.00, 12.04 or 12.06 of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926) or Social Security Ruling 12-2p.

* * *

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), with the following limitations: She [ ]is able to lift and/or carry twenty pounds occasionally and ten pounds frequently. She is able to sit, stand and/or walk for six hours total each. She is able to occasionally perform all postural activities. She is able to understand, remember and perform simple tasks and instructions. She is able to sustain concentration, persistence and pace for those tasks and instructions with appropriate breaks. She is able to interact appropriately with supervisors and coworkers for work-only related matters. She is able to handle infrequent contact with the general public. She is able to adapt to infrequent changes in her workplace.

* * *

6. The claimant is capable of performing her . . . past relevant work as a gluer. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

* * *

7. The claimant has not been under a disability, as defined in the Social Security Act, from July 1, 2015, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(AR 19–30.) The Social Security Appeals Council denied Gross's request for review on February 16, 2021, making the ALJ's decision the final decision of the Commissioner. (AR 2–7.)

C. **Appeal Under 42 U.S.C. § 405(g)**

Gross filed this action for review of the ALJ's decision on April 5, 2021 (Doc. No. 1), and this Court has jurisdiction under 42 U.S.C. § 405(g). Gross argues that the ALJ improperly

3

discounted a medical source statement from her physician, Dr. Zachary Hutchens, in formulating Gross's residual functional capacity, failed to properly evaluate the impact of Gross's fibromyalgia on her residual functional capacity, and improperly discounted Gross's statements regarding her disabling symptoms. (Doc. No. 20-1.) The Commissioner responds that the ALJ complied with SSA regulations and that her determinations are supported by substantial record evidence. (Doc. No. 23.) Gross did not file an optional reply.

### D. Review of the Record

The ALJ and the parties have thoroughly described and discussed the medical and testimonial evidence in the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## II. Legal Standards

### A. Standard of Review

This Court's review of an ALJ's decision is limited to determining (1) whether the ALJ's findings are supported by substantial evidence and (2) whether the ALJ applied the correct legal standards. *See* 42 U.S.C. § 405(g); *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (alteration in original) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence is less than a preponderance but "more than a mere scintilla" and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co.*, 305 U.S. at 229); *see also Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (same). Further, "[t]he Social Security Administration has established rules for how an ALJ must evaluate a disability claim and

has made promises to disability applicants as to how their claims and medical evidence will be reviewed." *Gentry*, 741 F.3d at 723. Where an ALJ fails to follow those rules or regulations, "we find a lack of substantial evidence, 'even where the conclusion of the ALJ may be justified based upon the record.'" *Miller*, 811 F.3d at 833 (quoting *Gentry*, 741 F.3d at 722).

      **B.**      **Determining Disability at the Administrative Level**

DIB and SSI benefits are available to individuals who are disabled, which is defined in this context as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) (explaining that this definition applies in the DIB and SSI contexts).

ALJs must employ a "five-step sequential evaluation process" to determine whether a claimant is disabled, proceeding through each step until a determination can be reached. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). For purposes of this case, the regulations governing disability determination for DIB and SSI benefits are identical, aside from the requirement that Gross show disability before her last insured date to receive DIB under Title II. *See Colvin*, 475 F.3d at 730 (citing 20 C.F.R. §§ 404.1520, 416.920). At step one, the ALJ considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). "[I]f the claimant is performing substantial gainful activity, then the claimant is not disabled." *Miller*, 811 F.3d at 834 n.6. At step two, the ALJ determines whether the claimant suffers from "a severe medically determinable physical or mental impairment" or "combination of impairments" that meets the 12-month durational requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). "If the claimant does not have a severe impairment or combination of impairments [that meets the durational requirement], then the claimant is not disabled." *Miller*, 811 F.3d at 834 n.6. At step three, the ALJ

5

Case 1:21-cv-00022    Document 24    Filed 08/19/22    Page 5 of 19 PageID #: 807

considers whether the claimant's medical impairment or impairments appear on a list maintained by the SSA that "identifies and defines impairments that are of sufficient severity as to prevent any gainful activity." *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); *see* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). "If the claimant's impairment meets or equals one of the listings, then the ALJ will find the claimant disabled." *Miller,* 811 F.3d at 834 n.6. If not, the ALJ proceeds to step four. *Combs*, 459 F.3d at 643; *see also Walker v. Berryhill*, No. 3:16-1231, 2017 WL 6492621, at *3 (M.D. Tenn. Dec. 19, 2017) (explaining that "[a] claimant is not required to show the existence of a listed impairment in order to be found disabled, but such showing results in an automatic finding of disability and ends the inquiry"), *report and recommendation adopted*, 2018 WL 305748 (M.D. Tenn. Jan. 5, 2018).

At step four, the ALJ evaluates the claimant's past relevant work and "'residual functional capacity,' defined as 'the most [the claimant] can still do despite [her] limitations.'" *Combs*, 459 F.3d at 643 (alterations in original) (quoting 20 C.F.R. § 404.1545(a)(1)); *see* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Past work is relevant to this analysis if the claimant performed the work within the past 15 years, the work qualifies as substantial gainful activity, and the work lasted long enough for the claimant to learn how to do it. 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). If the claimant's residual functional capacity (RFC) permits her to perform past relevant work, she is not disabled. *Combs*, 459 F.3d at 643. If a claimant cannot perform past relevant work, the ALJ proceeds to step five and determines whether, "in light of [her] residual functional capacity, age, education, and work experience," a claimant can perform other substantial gainful employment. *Id.* While the claimant bears the burden of proof during the first four steps, at step five the burden shifts to the Commissioner to "identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity and vocational

profile." *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011). "Claimants who can perform such work are not disabled." *Combs*, 459 F.3d at 643; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

**III.     Analysis**

  **A.     Gross's DIB Claim**

Title II of the Social Security Act is an insurance program that "provides old-age, survivor, and disability benefits to insured individuals irrespective of financial need." *Bowen v. Galbreath*, 485 U.S. 74, 75 (1988). To receive DIB, Gross must establish that she had a disability on or before the last date she was eligible for insurance under Title II, which is determined based on her earnings record. *See* 42 U.S.C. § 423(a)(1)(A), (c)(1); 20 C.F.R. § 404.130. The ALJ determined that December 31, 2015, was the last date Gross was eligible for insurance under Title II (AR 19), and Gross has not challenged that determination on appeal.

Gross's primary argument in support of reversing the ALJ's denial of her DIB and SSI claims is that the ALJ improperly discounted a February 2020 medical opinion from Dr. Hutchens regarding Gross's diagnoses and work-related functional limitations. (Doc. No. 20-1.) Dr. Hutchens's opinion only addresses Gross's health beginning in September 2018 (AR 714–15), which is well after Gross's last insured date of December 31, 2015. The ALJ's consideration of Dr. Hutchens's opinion is therefore not relevant to Gross's DIB claim.

Gross's remaining arguments in favor of reversing the ALJ's denial of her DIB and SSI claims are that the ALJ did not properly consider the record evidence regarding her fibromyalgia in formulating her RFC and did not properly evaluate her disabling symptoms. (Doc. No. 20-1.) Gross's brief in support of her motion for judgment on the record does not identify or discuss any record evidence regarding her fibromyalgia or disabling symptoms from the time period relevant to her DIB claim. The ALJ found that, "[a]s far as [Gross]'s Title II claim is concerned, with a date

7

last insured of December 31, 2015, the evidence reveals she only sought and received treatment on two occasions in 2015." (AR 22.) The ALJ summarized the record evidence from those two appointments as follows:

> The claimant appeared at the Hickman Medical Clinic (Hickman Clinic) on January 12, 2015 and reported her chest was hurting, that her body and joints were aching, and that she was fatigued at that time. The claimant was not noted to be in any serious distress that day, and her mental status and physical examinations were noted to be normal then as far as her psychological, cardiovascular and musculoskeletal systems were concerned. The claimant was diagnosed with unspecified myalgia/myositis on that date, she was given an injection for the same, and advised to return on an as-needed basis (Exhibit 3F).
>
> The claimant returned to the Hickman Clinic a little over two months later on March 16, 2015 and reported she was having some pain in her neck, upper back and left shoulder, and was fatigued at that time as well. The claimant was noted to appear healthy and be well-nourished, well-developed and in no acute distress that day, and her mental status and physical examinations were again noted to be normal then except for some tenderness in her upper back on palpitation. The claimant was diagnosed with a muscle strain and fatigue on that date, she was advised to take over-the-counter medication, apply ice/heat treatments to the affected area and perform stretching exercises for the same, and return a week later if her symptoms did not improve (Id.).
>
> The claimant did not return to the Hickman Clinic a week later, and she did not seek or receive any additional treatment of any kind again after that prior to her date last insured of December 31, 2015[,] according to the evidence in the record.

(AR 22–23.) Gross has not challenged the ALJ's finding that these are the only medical records relevant to her DIB claim, has not addressed these records—which predate her alleged onset date of July 1, 2015—and has not challenged the ALJ's description of or reliance on them. Nor has she pointed to any other specific evidence regarding her fibromyalgia or disabling symptoms relevant to her DIB claim that the ALJ failed to properly consider.

Gross therefore has not shown, on this briefing, that the ALJ's denial of her DIB claim violated SSA regulations or otherwise lacked the support of substantial record evidence. Accordingly, the Court should affirm the ALJ's decision in part with respect to Gross's DIB claim.

## B. Gross's SSI Claim

Because Title XVI of the Social Security Act "is a welfare program" that provides "benefits to financially needy individuals who are aged, blind, or disabled regardless of their insured status[,]" *Bowen*, 485 U.S. at 75, Gross's last insured date is not relevant to her SSI claim. The Court will therefore separately address Gross's arguments as they pertain to that claim.

As explained, Gross's central argument in support of reversal is that the ALJ improperly discounted Dr. Hutchens's medical opinion regarding Gross's diagnoses and functional limitations in formulating Gross's RFC. (Doc. No. 20-1.) For SSI claims filed on or after March 27, 2017, new SSA regulations provide that the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative findings, including those from [the claimant's] medical sources."[5] 20 C.F.R. § 416.920c(a). Instead, the ALJ must "evaluate the persuasiveness" of all medical opinions and prior administrative medical findings based on five factors: (1) supportability; (2) consistency; (3) relationship with the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors including, but not limited to, evidence showing that the medical source is familiar with other evidence in the record or has an understanding of the SSA's policies and evidentiary requirements. *Id.* § 416.920c(a), (c)(1)–(5). The regulations specifically

---

[5] This is a departure from the regulations governing claims filed before March 27, 2017, which "[g]enerally . . . g[a]ve more weight to the medical opinion of a source who ha[d] examined [the claimant] than to the medical opinion of a medical source who ha[d] not examined [the claimant]." 20 C.F.R. § 416.927(c)(1). Those regulations specifically required an ALJ to give controlling weight to a medical opinion from the claimant's treating physician if the opinion was "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [was] not inconsistent with other substantial evidence in [the] case record[.]" *Id.* § 416.927(c)(2).

9

require ALJs to "articulate in [their] determination[s] or decision[s] how persuasive [they] find all of the medical opinions" in a claimant's record. *Id.* § 416.920c(b).

Supportability and consistency are "[t]he most important factors" in this analysis. *Id.* § 416.920c(a). In assessing supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be." *Id.* § 416.920c(c)(1). In assessing consistency, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* § 416.920c(c)(2). The SSA has promised claimants that it "will explain how [it] considered the supportability and consistency factors . . . in [its] determination or decision" and "may, but [is] not required to, explain how [it] considered the [remaining] factors . . . ."[6] *Id.* § 416.920c(b)(2). "A reviewing court 'evaluates whether the ALJ properly considers the factors as set forth in the regulations to determine the persuasiveness of a medical opinion.'" *Toennies v. Comm'r of Soc. Sec.*, No. 1:19-CV-02261, 2020 WL 2841379, at *14 (N.D. Ohio June 1, 2020) (quoting *Ryan L.F. v. Comm'r of Soc. Sec.*, No. 6:18-cv-01958, 2019 WL 6468560, at *4 (D. Or. Dec. 2, 2019)).

### 1. The ALJ's Analysis of Dr. Hutchens's Medical Opinion

Dr. Zachary Hutchens, M.D., is a provider at Hickman Medical Clinic (HMC) in Centerville, Tennessee. (AR 410–61, 569–607.) Gross's HMC medical records show that Dr. Hutchens oversaw and reviewed Gross's visits with HMC Advanced Practice Registered

---

[6] This differs from the regulations governing SSI claims filed before March 27, 2017, which promised claimants that the SSA would "always give good reasons in [its] notice of determination or decision for the weight [it] g[a]ve [the] treating source's medical opinion." 20 C.F.R. § 416.927(c)(2).

Nurse Melissa Monroe in September and November 2018 and in August and October 2019. (AR 413, 416, 418, 422, 583, 592, 595.) The record includes a medical source statement form that Dr. Hutchens signed in February 2020 in support of Gross's disability claims.[7] (AR 714–15.) Dr. Hutchens listed Gross's diagnoses as "[a]ortic atherosclerosis, anxiety, depression, dyslipidemia, fatigue, fibromyalgia, [hypertension], polyarthropathy, tachycardia, [and] mood swings[.]" (AR 714.) He indicated that Gross's "limitations and abilities" included: occasionally lifting twenty pounds; frequently lifting five pounds; standing and walking for no more than fifteen minutes at a time for a total of two hours in a workday; sitting for one hour at a time for a total of four hours in a workday; occasionally bending, stooping, and balancing; frequently engaging in fine and gross manipulation with her right and left hands; frequently raising her left and right arms over shoulder level; occasionally working around dangerous equipment; frequently operating a motor vehicle; and occasionally tolerating heat, cold, and exposure to noise, dust, smoke, or fumes. (*Id.*) Dr. Hutchens did not indicate any vision or hearing limitations and stated that Gross did not need to elevate her legs during an eight-hour workday and did not require a hand-held assistive device for ambulation. (AR 715.) With respect to pain, Dr. Hutchens indicated that Gross suffered from moderate to severe pain that constantly interfered with her attention or concentration. (*Id.*) He rated her level of fatigue as severe. (*Id.*) He also stated that the side effects of Gross's prescribed medications would cause a moderate to severe disturbance in Gross's ability "to perform normal, routine, work-like functions . . . ." (*Id.*) Dr. Hutchens opined that, because of her impairments, Gross would miss four or more days of work each month. (*Id.*) He further stated that Gross's limitations had "been at this severity" since September 2018. (*Id.*) Dr. Hutchens left a section of

---

[7] Monroe also signed the medical source statement. (AR 715.)

the medical source statement labeled "[c]omments and/or findings which support the above conclusions" blank. (*Id.*)

In formulating Gross's RFC, the ALJ analyzed Dr. Hutchens's opinion as follows:

> The opinion of Zachary Hutch[e]ns, M.D., one of the claimant's healthcare providers at the Hickman Clinic, that she is not even capable of performing the full range of sedentary work is not persuasive or accepted since it is not supported by and is actually inconsistent with his own objective medical findings, and the overall weight of the evidence in the record as a whole (Exhibit 9F).

(AR 28.)

Gross argues on appeal that this analysis and the ALJ's resulting RFC lack the support of substantial record evidence because the ALJ did not explain which evidence supported her determination that Dr. Hutchens's opinion was not persuasive. (Doc. No. 20-1.) Gross further points to specific medical findings from her HMC treatment notes that she argues support Dr. Hutchens's opinion. (*Id.*) The Commissioner responds that "the ALJ properly evaluated the persuasiveness of Dr. Hutchens's opinion by addressing the factors of supportability and consistency" and finding "Dr. Hutchens's opinion not supported by and inconsistent with both his own objective findings as well as the record evidence as a whole." (Doc. No. 23, PageID# 794 (citing AR 28).) The Commissioner argues that "[t]he ALJ discussed those objective findings and the record evidence as a whole in great detail in other paragraphs in the decision, and they constitute substantial evidence to support the ALJ's evaluation of the opinion." (*Id.* (citing AR 22–28).)

The parties' arguments boil down to a dispute about the level of explanation ALJs are required to provide under the new SSA regulations governing consideration of medical evidence. Courts in this circuit have found that, while the new SSA "regulations plainly are less demanding than the former rules governing the evaluation of medical source opinions, especially those of treating sources[,] . . . 'they still require that the ALJ provide a coherent explanation of [her]

reasoning.'" *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 906 (E.D. Mich. 2021) (third alteration in original) (quoting *Lester v. Saul*, No. 20-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 20-1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021)). The regulations set forth the "minimum level of articulation" ALJs must "provide in [their] determinations and decisions to provide sufficient rationale for a reviewing adjudicator or court." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5858 (Jan. 18, 2017) (to be codified at 20 C.F.R. pts. 404, 416) , *technical errors corrected by* 82 Fed. Reg. 15132-01 (Mar. 27, 2017). "An 'ALJ's failure . . . to meet these minimum levels of articulation frustrates [the] court's ability to determine whether [claimant's] disability determination was supported by substantial evidence.'" *Hardy*, 554 F. Supp. 3d at 906 (alterations in original) (quoting *Vaughn v. Comm'r of Soc. Sec.*, No. 20-cv-1119, 2021 WL 3056108, at *11 (W.D. Tenn. July 20, 2021)). It also "ignores the mandate of the regulations that guarantees claimants a certain level of process that cannot be discounted by the substantial evidence test alone." *Id.* at 908 (citing *Blakley*, 581 F.3d at 410).

The district court's decision in *Hardy v. Commissioner of Social Security* provides a relevant example of the level of explanation required by the new SSA regulations. In *Hardy*, the ALJ found, in formulating the claimant's RFC, that two doctors' opinions regarding the claimant's health were unpersuasive and stated her conclusions regarding those opinions "in single sentences addressing each source[.]" 554 F. Supp. 3d at 904. Addressing the first doctor's opinion, the ALJ wrote that "Dr. Carey's form statement was unpersuasive; it lacked support in Dr. Carey's own contemporaneous treatment documentation or elsewhere in the extensive record." *Id.* at 906 (citation omitted). Addressing the second doctor's opinion, the ALJ stated "that 'Dr. Trostinkaia's form statement was overly sympathetic to claimant and otherwise unpersuasive. As detailed above,

13

Dr. Trostinkaia's clinical examination reports include few musculoskeletal findings, and none supporting effectively requiring claimant to lie down for a significant portion of the work day.'" *Id.* at 907 (citation omitted). The court found that these explanations failed to provide the minimum level of articulation required under the new regulations because the ALJ "did not refer to [numerous supporting] medical findings in the record[,]" "did not explain why she chose to accept the findings that undercut the opinions and reject the findings that supported them[,]" and offered "no discussion—no 'articulation'—of the supportability and consistency factors." *Id.* While the ALJ summarized the record evidence earlier in her decision, the court found that summary insufficient to satisfy the ALJ's obligation to explain her reasoning under the regulations because the "summary included both supportive and contradictory information" and therefore "d[id] little to explain the ALJ's reasoning or to 'provide sufficient rationale for a reviewing adjudicator or court.'" *Id.* (quoting *Warren I. v. Comm'r of Soc. Sec.*, No. 5:20-CV-495, 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021)). The Commissioner argued in *Hardy* that "other evidence in the administrative record . . . could furnish substantial evidence for a nondisability finding and support for rejecting the physicians' opinions" and "outline[d] a theoretical path that the ALJ could have followed had she properly applied the regulations . . . ." *Id.* at 907–08. The court rejected the Commissioner's argument, emphasizing that "[i]t is not the role of a reviewing court to comb the record and imagine manifold ways in which the factors could have been applied to the evidence that was presented." *Id.* at 909. Rather, the ALJ "has the obligation in the first instance to show his or her work, i.e., to explain in detail *how the factors actually were applied* in each case, to each medical source. Resorting to boilerplate language to support a finding of unpersuasiveness does not satisfy that obligation." *Id.* The court further explained that "the importance of cogent

explanations is perhaps even more important" "[b]ecause of the greater latitude afforded ALJs under the new regulations[.]" *Id.* at 908.

The ALJ in this case similarly failed to satisfy the regulations' required minimum levels of articulation in finding Dr. Hutchens's opinion unpersuasive. Her single sentence describing her reasons for discrediting Dr. Hutchens's medical source statement—asserting that Dr. Hutchens's opinion "that [Gross] is not even capable of performing the full range of sedentary work is not persuasive or accepted since it is not supported by and is actually inconsistent with his own objective medical findings[ ] and the overall weight of the evidence in the record as a whole" (AR 28)—is substantively indistinguishable from the sentence regarding the first doctor's opinion in *Hardy* that the court found insufficient. Here, as in *Hardy*, the ALJ's separate summary of the medical evidence in Gross's HMC records includes "both supportive and contradictory information[.]" *Hardy*, 554 F. Supp. 3d at 907. Specifically, the ALJ's summary describes HMC providers' treatment of Gross's mental and physical ailments from November 2018 through December 2019. (AR 23–25.) The summary describes, among other evidence, Gross's repeated reports of anxiety, depression, fatigue, shortness of breath, muscle aches, joint pain, and difficulty sleeping; HMC providers' notations that Gross sometimes appeared anxious, agitated, crying and in significant distress; HMC providers' diagnoses of panic attacks, anxiety, dyspnea, fatigue, fibromyalgia, and tachycardia; and HMC providers' treatments of these conditions. (AR 23–25.) As in *Hardy*, the ALJ's summary of the HMC records therefore "does little to explain the ALJ's reasoning or to 'provide sufficient rationale for a reviewing adjudicator or court.'" *Hardy*, 554 F. Supp. 3d at 907 (quoting *Warren I.*, 2021 WL 860506, at *8).

The ALJ's failure to identify Dr. Hutchens's "inconsistent" "objective medical findings" in any detail is particularly problematic here because the ALJ found that fibromyalgia is one of

Gross's severe impairments. "Fibromyalgia . . . is a medical condition marked by 'chronic diffuse widespread aching and stiffness of muscles and soft tissues.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 n.3 (6th Cir. 2007) (quoting *Stedman's Medical Dictionary for the Health Professions and Nursing* at 541 (5th ed. 2005)). The Sixth Circuit has held "that, unlike medical conditions that can be confirmed by objective testing, fibromyalgia patients present no objectively alarming signs." *Id.* at 243. For example, "fibromyalgia patients 'manifest normal muscle strength and neurological reactions and have a full range of motion.'" *Id.* at 244 (quoting *Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 820 (6th Cir. 1988)). Fibromyalgia is therefore "not susceptible of objective verification through traditional means[.]" *Id.* The SSA recognizes that "[w]idespread pain and other symptoms associated with [fibromyalgia], such as fatigue, may result in exertional limitations that prevent a person from doing the full range of unskilled work in one or more of the exertional categories" that the SSA uses to determine individuals' RFCs. SSR 12-2P, 2012 WL 3104869, at *6 (July 25, 2012); *see also id.* at *3 (recognizing that fibromyalgia "symptoms, signs, [and] co-occurring conditions" include "manifestations of fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, [and] irritable bowel syndrome" (footnotes omitted)).

The Commissioner argues that the ALJ's summary of the HMC medical records substantially supports her "brief" analysis of Dr. Hutchens's medical opinion and cites *Terry v. Saul*, No. 20-CV-1133, 2021 WL 2222738, at *6 (W.D. Tenn. June 2, 2021), in support of this argument. (Doc. No. 23, PageID# 794.) The ALJ's analysis in *Terry* is distinguishable. In finding that a doctor's opinion was "persuasive because it was 'consistent with the totality of the evidence and support[ed] the reduced range of sedentary work[,]'" the ALJ specifically "identified portions of the record that were consistent with [the doctor's] opinion, particularly how Terry had reduced

16

Case 1:21-cv-00022    Document 24    Filed 08/19/22    Page 16 of 19 PageID #: 818

his body mass index, that his straight leg raise test was negative, that most of his lung examinations were normal, and that a 2019 ultrasound showed no evidence of [deep vein thrombosis]." *Terry*, 2021 WL 2222738, at *6 (citations omitted). These findings were in addition to the *Terry* ALJ's earlier review of the relevant medical history. *See id.* The ALJ in this case did not point to any specific record evidence in explaining her reasons for finding Dr. Hutchens's opinion unpersuasive. And, as explained, the ALJ's prior summarization of Gross's HMC records included clinical findings that supported Dr. Hutchens's opinion.

The Commissioner further argues that other "substantial evidence supports the ALJ's evaluation of Dr. Hutchens's medical opinion." (Doc. No. 23, PageID# 795.) However, as the *Hardy* court determined, this argument amounts to "outlin[ing] a theoretical path that the ALJ could have followed had she properly applied the regulations requiring that she 'explain how [she] considered the supportability and consistency factors for a medical source's opinions'" and is therefore insufficient to show that she did in fact comply with those regulations. 554 F. Supp. 3d at 908 (second alteration in original) (quoting 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)). Further, "[e]ven if the Court 'were to agree that substantial evidence supports the ALJ's weighing of [Dr. Hutchens's] opinion[ ], substantial evidence alone does not excuse non-compliance with [the regulations] as harmless error.'"[8] *Id.* (fourth alteration in original) (quoting *Blakley*, 581 F.3d at 410).

---

[8] "In some instances, the failure to apply the rules properly can be harmless error, such as where 'a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it,' or where the Commissioner 'has met the goal of . . . the procedural safeguard of reasons.'" *Hardy*, 554 F. Supp. 3d at 909 (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)). The Commissioner has not argued that either instance exists here, and the Court finds that they do not.

Accordingly, the Court should find that the ALJ's evaluation of Dr. Hutchens's medical opinion failed to comply with SSA regulations governing consideration of medical evidence. Where, as here, "an ALJ fails to follow agency rules and regulations, we find a lack of substantial evidence, 'even where the conclusion of the ALJ may be justified based upon the record.'" *Miller*, 811 F.3d at 833 (quoting *Gentry*, 741 F.3d at 722). Remand of Gross's SSI claim is therefore necessary for reconsideration of Dr. Hutchens's opinion to allow appropriate consideration of the evidence and articulation of the ALJ's reasoning in accordance with the regulations.

### 2. Gross's Remaining Arguments

Because remand of Gross's SSI claim is warranted to reconsider Dr. Hutchens's opinion, and because reconsideration of that opinion may require reformulation of Gross's RFC and reconsideration of her symptoms, the Court need not address Gross's remaining arguments in support of remand. *See Champion v. Soc. Sec. Admin.*, No. 3:19-cv-00732, 2021 WL 966052, at *8 (M.D. Tenn. Feb. 16, 2021) (declining to address claimant's remaining arguments where remand was warranted for reconsideration of medical opinions), *report and recommendation adopted*, 2021 WL 951221 (M.D. Tenn. Mar. 12, 2021). If necessary, Gross may raise these issues again on appeal. *See Dawes v. Saul*, No. 3:19-cv-00001, 2020 WL 587426, at *8 (M.D. Tenn. Feb. 6, 2020), *report and recommendation adopted sub nom. Dawes v. Soc. Sec. Admin.*, 2020 WL 906227 (M.D. Tenn. Feb. 25, 2020); *Wilson v. Colvin*, No. 3:13-CV-84, 2014 WL 619713, at *6 (E.D. Tenn. Feb. 18, 2014).

## IV. Recommendation

For these reasons, the Magistrate Judge RECOMMENDS that Gross's motion for judgment on the record (Doc. No. 20) be DENIED IN PART AND GRANTED IN PART. The motion should be denied with respect to Gross's DIB claim, and the Commissioner's denial of Gross's DIB claim should be AFFIRMED. The motion should be granted with respect to Gross's SSI

claim, the Commissioner's denial of Gross's SSI claim should be VACATED, and Gross's SSI claim should be REMANDED to the Social Security Administration for further administrative proceedings consistent with this Report and Recommendation.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this report and recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 19th day of August, 2022.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge